Glen Hallman
State Bar No. 005888
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Phoenix, AZ 85016-2995
(t) 602-530-8000
(f) 602-530-8500
gh@gknet.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

| | |
|---|---|
| **Progressive Casualty Insurance Company,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.** |
| **Federal Deposit Insurance Corporation, as Receiver of Community Bank of Arizona; Edward M. Jamison; Stephen R. Curley; James E. Nelson; LeRoy R. Aman; Leanne B. Appledorn-March; Richard L. Murphy; and Philip B. Whitaker,** | **PROGRESSIVE CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT** |
| **Defendants.** | |

Now comes Progressive Casualty Insurance Company ("Progressive") and files its Original Complaint against the Federal Deposition Insurance Corporation, as Receiver of Community Bank of Arizona (the "Receiver"), and Edward M. Jamison; Stephen R. Curley; James E. Nelson; LeRoy R. Aman; Leanne B. Appledorn-March; Richard L. Murphy; and Philip B. Whitaker (collectively the "Directors and Officers").

**I.      NATURE OF THE ACTION**

1.      This is an action by Progressive for a declaratory judgment with respect to Directors & Officers / Company Liability Insurance Policy for Financial Institutions No. 4548839-08 (the "Progressive Policy" or the "Policy") issued by Progressive to, *inter alia*,

Community Bank of Arizona (the "Bank"). On August 14, 2009, the Arizona Department of Financial Institutions ("ADFI") closed the Bank and appointed the FDIC as receiver. On information and belief, the Directors and Officers are former directors and officers of the Bank. Progressive seeks a declaration that there is no coverage under the Policy for the claim asserted against the Directors and Officers by the FDIC in a lawsuit filed in this Court on July 13, 2012, *Federal Deposit Insurance Corporation, as Receiver of Community Bank of Arizona v. Jamison, et al.*, No. 12-cv-01508 (D. Ariz. Phoenix Div.) (the "Receiver's Action"). A copy of the Progressive Policy, without the application, is attached hereto as Exhibit 1. A copy of the complaint in the Receiver's Action is attached hereto as Exhibit 2.

## II.      JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331 because all suits to which the FDIC is a party are deemed to arise under the law of the United States.

3.      Progressive brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. An actual controversy within the meaning of § 2201 exists between the parties regarding the coverage afforded under the Policy for the Receiver's Action.

4.      Venue is proper in the Phoenix Division of the District of Arizona pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district and division, and, upon information and belief, a majority of the Directors and Officers, and at least one of them, reside in this district and division.

## III.     THE PLAINTIFF

5.      Plaintiff Progressive is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Mayfield Village, Ohio.

## IV.     THE DEFENDANTS

### A.      The Federal Deposit Insurance Corporation

6.      Defendant FDIC is an agency and body corporate organized and existing under the laws of the United States of America, established under the Federal Deposit Insurance Act,

with its principal place of business in Washington, D.C. *See* 12 U.S.C. §§ 1811–1833(e). On information and belief, prior to its closure, the Bank was a state-charted bank based in Glendale, Arizona. On August 14, 2009, the Arizona Department of Financial Institutions declared the Bank to be insolvent, closed it, and appointed as receiver the FDIC pursuant to 12 U.S.C. § 1821(c). Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeded to all rights, titles, and privileges of the Bank with respect to the Bank and the Bank's assets and stands in the Bank's shoes with respect to claims against the Bank's former directors and officers. This action is brought against the FDIC in its capacity as receiver for the Bank.

**B.     The Individual Director and Officer Defendants**

7.     On information and belief, Defendant Edward M. Jamison is an individual who is a citizen of the State of Nevada and resides in Las Vegas, Nevada.

8.     On information and belief, Defendant Stephen R. Curley is an individual who is a citizen of the State of Arizona and resides in Scottsdale, Arizona.

9.     On information and belief, Defendant James E. Nelson is an individual who is a citizen of the State of Arizona and resides in Fountain Hills, Arizona.

10.     On information and belief, Defendant LeRoy R. Aman is an individual who is a citizen of the State of Arizona and resides in Phoenix, Arizona.

11.     On information and belief, Defendant Leanne B. Appledorn-March is an individual who is a citizen of the State of Arizona and resides in Glendale, Arizona.

12.     On information and belief, Defendant Richard L. Murphy is an individual who is a citizen of the State of Arizona and resides in Lake Havasu City, Arizona.

13.     On information and belief, Defendant Philip B. Whitaker is an individual who is a citizen of the State of Arizona and resides in Phoenix, Arizona.

14.     On information and belief, the Directors and Officers are all former members of the Bank's board of directors and/or former officers of the Bank.

## V.    FACTUAL ALLEGATIONS

### A.    The Policy

15.    Progressive issued Directors & Officers / Company Liability Insurance Policy for Financial Institutions No. 4548839-08 to the Bank and other Named Insureds for the claims-made Policy Period from July 31, 2007 to July 31, 2010 (the "Progressive Policy" or the "Policy"). (Ex. 1, Policy, Declarations, Items 1 & 2).

16.    Progressive terminated the Policy effective February 13, 2009. (*Id*. Endorsement Form Nos. 5082, 2254).

17.    Upon termination of the Policy, the Bank was entitled to purchase a one-year optional extended reporting, or Discovery Period, which it did. (*Id.*, § III; Endorsement Form No. 2254). The Discovery Period ran from February 13, 2009 to February 13, 2010. (*Id.*).

18.    Subject to all Policy terms, conditions, and exclusions, the Policy provides certain coverage for Claims that are first made against Insured Persons during the Policy Period, the Automatic Discovery Period, or the Discovery Period. The Insured Persons Liability Coverage Insuring Agreement (the "D&O Coverage") provides:

> The Insurer will pay on behalf of the Insured Persons, Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Insured Persons for which the Insured Persons are legally obligated to pay for Wrongful Acts, except for Loss the Company pays as indemnification.

(*Id.*, § I.A.).

19.    The Policy has a Limit of Liability applicable to the D&O Coverage of $11.5 million, (*Id.*, Declarations, Item 8), which is part of, and not in addition to, the Total Policy Limit applicable to all Claims first made during each Policy Year of the Policy. (*Id.*, Declarations, Item 3). Moreover, the Limit of Liability for Claims made during the Discovery Period is part of, and not in addition to, the $11.5 million Limit of Liability for D&O Coverage for all Claims made during the immediately preceding Policy Year. (*Id.*, § III.E.).

20.    The Policy is not a "duty-to-defend" policy. (*Id.*, § IX.A.). Rather, it provides, in pertinent part, that "[i]t shall be the duty of the Insured and not the duty of the Insurer to defend

- 4 -

Claims.  The Insured shall only retain counsel that is mutually agreed upon with the Insurer, consent for which shall not be unreasonably withheld." (*Id*., § IX.A.(1)).

21.    The Policy further provides that "the Insurer, if requested by the Insured, shall advance covered Defense Costs on a current basis, except when advancement of Defense Costs is prohibited by law or regulation.  The Insured shall repay any advanced Defense Costs to the Insurer in the event it is established that the Insurer has no liability under this Policy for such Defense Costs." (*Id*., § IX.B.(1)).  Defense Costs are part of Loss under the Policy, (*Id*., § IV.N.), and advancement of Defense Costs erodes the limit of liability.  (*Id*., "Important Notice").

**B.    The Receiver's February 11, 2010 Letter**

22.    On or about February 11, 2010, during the Policy's Discovery Period, the Receiver sent a letter (the "Receiver's Letter") addressed to twenty-seven individuals, including the Directors and Officers.  A copy of this letter, with the names of the recipients other than the Directors and Officers redacted, is attached hereto as Exhibit 3.

23.    The Receiver's Letter is captioned a "Demand for Payment of Civil Damages and Wrongful Acts" and states, in part: "By this letter, the Federal Deposition Insurance Corporation ('FDIC') makes this demand for payment of civil damages on [the recipients of the letter], all of whom are former Directors and/or Officers of [the Bank and/or its holding company]." (Ex. 3 at 2).

**C.    The Receiver's Action**

24.    On or about July 13, 2012, the Receiver filed the Receiver's Action in this Court. (Ex. 2).

25.    The FDIC brings the Receiver's Action "in its capacity as Receiver for Community Bank of Arizona ('CBOA' or 'Bank') of Phoenix, Arizona, to recover compensatory and other damages in excess of $11 million." (*Id*. ¶1).

26.    The FDIC measures this $11 million in alleged damages in terms of losses the Bank suffered on loan participations it purchased from its "sister bank," Community Bank of

Nevada ("CBON"), and from First National Bank of Arizona without performing a proper underwriting analysis.  (*Id.* ¶¶ 21–70).

28. 27.    The complaint in the Receiver's Action contains three claims for relief: 1) Negligence Claim Against Officer and Director Defendants (Defendants Jamison, Curley, and Nelson); 2) Gross Negligence Claim Against All Defendants; and 3) Breach of Fiduciary Duties Against All Defendants.  (*Id.*, ¶¶ 71–85).

**VI.    CLAIMS FOR RELIEF**

**Count One**

**Claim for Declaratory Judgment**

**The Insured vs. Insured Exclusion Bars Coverage for the Receiver's Action**

28.    Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 27 of this Complaint.

29.    The Policy provides:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim by, on behalf of, or at the behest of the Company, any affiliate of the Company or any Insured Person in any capacity except where such Claim is brought and maintained:
>
> (1)    in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of the Policy;
>
> (2)    by an Insured Person solely as a customer of the Company; provided such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any other Insured; or
>
> (3)    by a security holder of the Company as a derivative action on behalf of the Company or such affiliate; provided such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any Insured or any affiliate of the Company.

(Ex. 1, Policy, § V.J. (the "Insured vs. Insured Exclusion")).

30.    The Policy defines Company, in pertinent part, as "the entity or entities set forth in Item 1 of the Declarations . . . ."  (*Id.*, § IV.E. (as amended by Endorsement Form No. 2254 (12/06)).  The Bank is one of the entities set forth in Item 1 of the Declarations.  (*Id.*, Declarations, Item 1).  Therefore the Bank is a Company, as that term is defined in the Policy.

31.   The Bank was closed by the ADFI on or about August 14, 2009, and the FDIC was appointed as receiver.

32.   At that time, as a matter of law, the FDIC succeeded to all rights, titles, and privileges of the Bank with respect to the Bank and the Bank's assets.   28 U.S.C. § 1821(d)(2)(A)(i).

33.   As the FDIC has expressly acknowledged in its complaint in the Receiver's Action, it brought suit against the Directors and Officers "it its capacity as Receiver for Community Bank of Arizona," and it seeks to recover "compensatory and other damages in excess of $11 million" the Directors' and Officers' alleged misconduct caused CBOA to incur. (Ex. 2, ¶¶ 1, 5).   In this regard, the FDIC expressly alleges that the Directors' and Officers' "obvious breaches actually and proximately caused CBOA substantial damages, for which the [Receiver] now sues."   (*Id*. ¶ 5).

34.   The Receiver's Action, therefore, constitutes a Claim "by, on behalf of, or at the behest of the Company [i.e., the Bank]."

35.   None of the carve-outs from the Insured vs. Insured Exclusion are applicable.

36.   The Insured vs. Insured Exclusion precludes coverage under the Policy for the Receiver's Action.

37.   Accordingly, Progressive seeks a declaratory judgment that the Policy's Insured vs. Insured Exclusion applies to preclude all coverage under the Policy for the Receiver's Action.

**Count Two**

**Claim for Declaratory Judgment (All Defendants)**

**The Loan Loss Carve-Out Bars Coverage for the Bank's Alleged Loan Losses**

38.   Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 37 of this Complaint.

39.   The Policy provides no coverage for amounts that do not constitute Loss.   The Policy defines Loss, in pertinent part, as:

> Defense Costs and any amount which the Insured Persons or the Company (if applicable) are legally obligated to pay resulting from a Claim, including

damages, judgments, settlements, pre- and post-judgment interest, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law. Loss shall not include:

\* \* \*

(3)    any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt . . . .

(Ex. 1, Policy, § IV.N. (the "Loan Loss Carve-Out")).

40.    In the Receiver's Action, the Receiver seeks to recover $11 million in losses the bank suffered on loan participations it purchased without adequate underwriting (the "Loan Losses"). (Ex. 2, ¶¶ 21–70).

41.    In this regard, the Receiver specifically alleges that "[r]ubber stamping of these loans caused CBOA significant injury. As of July 21, 2009, approximately 60 percent of the loans that CBON had originated and participated to CBOA were designated as 'nonaccrual,' meaning that the Bank deemed the likelihood of repayment so dim that it could no longer accrue interest on the loans." (*Id*. ¶ 26).

42.    The Loan Losses suffered by the Bank on the loan participations criticized by the Receiver constitute "unpaid, unrecoverable, or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt."

43.    Accordingly, Progressive seeks a declaratory judgment that the Policy's Loan Loss Carve-Out precludes coverage for the Bank's alleged Loan Losses sought by the Receiver in the Receiver's Action.

### Count Three

**Reservation of Rights (All Defendants)**

44.    Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 43 of this Complaint.

45.    In addition to seeking a declaratory judgment, Progressive has reserved all of its rights under the Policy and applicable law. By seeking a judicial determination based on the foregoing Policy provisions, Progressive does not waive its potential coverage defenses under other Policy terms. Developments in connection with the Receiver's Action may render

additional defenses to coverage ripe for judicial determination. Specifically, but without limitation, Progressive continues to reserve its rights to the extent the Receiver's Action arises from Wrongful Acts occurring after the termination of the Progressive Policy on February 13, 2009. Progressive's reservation is base on, but not limited to, the Policy language discussed in Progressive's correspondence of March 31, 2010. That correspondence, with the names of the recipients other than the Directors and Officers redacted, is attached as Exhibit 4 and incorporated herein by reference.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Progressive Casualty Insurance Company prays for relief as follows:

1.    A judicial declaration that the Policy's Insured vs. Insured Exclusion applies to exclude coverage for the Receiver's Action and that, therefore, the Policy provides no coverage for the Receiver's Action;

2.    A judicial declaration that the Policy's Loan Loss Carve-Out precludes coverage for the alleged damages sought by the Receiver in the Receiver's Action consisting of alleged Loan Losses and that, therefore, the Policy provides no coverage for the Receiver's Action;

3.    A judicial declaration of the rights and obligations of Progressive and the Directors and Officers under the Policy related to the Receiver's Action;

4.    An award to Progressive of all of its costs and its reasonable attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01; and

5.    An order awarding Progressive such additional declaratory and other relief as shall be found to be appropriate in the circumstances.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted this 1st day of February, 2013.


 /s/ Glen Hallman
Glen Hallman
State Bar No. 005888
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Phoenix, AZ 85016-2995
(t) 602-530-8000
(f) 602-530-8500
gh@gknet.com

and

Lewis K. Loss (*pro hac vice* application to be filed)
Matthew J Dendinger (*pro hac vice* application to be filed)
Thompson, Loss & Judge, LLP
Two Lafayette Centre
1133 21st Street, NW, Suite 450
Washington, DC 20036
(t) 202-778-4060
(f) 202-778-4099
lloss@tljlaw.com
mdendinger@tljlaw.com

Counsel for Progressive Casualty Insurance Company